**In re CO PETRO MARKETING GROUP, INC., Debtor.**

**Bankruptcy No. LA 80–04457–JD.**

United States Bankruptcy Court, C. D. California.

Sept. 10, 1980.

Bernard Elias, Beverly Hills, Cal., Anthony Murray, Brian C. Cuff, Long Beach, Cal., Ball, Hunt, Hart, Brown & Baerwitz, Beverly Hills, Cal., Peter R. Stoll, A Professional Law Corp., Los Angeles, Cal., for debtor.

Ronald S. Orr, Gibson, Dunn & Crutcher, Los Angeles, Cal., Edmond R. Davis, Overton, Lyman & Prince, Los Angeles, Cal., for trustee.

Gregory C. Glynn, Associate Gen. Counsel, David R. Merrill, Charles R. Mills, Nancy E. Yanofsky, Commodity Futures Trading Commission, Washington, D. C., Andrea Sheridan Ordin, U. S. Atty., Howard Gest, Asst. U. S. Atty., Los Angeles, Cal., for the Commodity Futures Trading Commission.

## OPINION

JAMES R. DOOLEY, Bankruptcy Judge.

On May 19, 1980 Co Petro Marketing Group, Inc., ("Co Petro") filed a voluntary petition for a Chapter 11 reorganization under Title I of the Bankruptcy Reform Act of 1978 (The Bankruptcy Code), 11 U.S.C. § 101 *et seq.* The Commodity Futures Trading Commission ("Commission") has moved to dismiss Co Petro's petition on

the grounds that (1) as a matter of law a commodity broker, such as Co Petro, is barred by § 109(d) of the Bankruptcy Code, 11 U.S.C. § 109(d), from reorganizing under Chapter 11 and (2) as a matter of equity Co Petro should not be allowed to circumvent the order of the United States District Court for the Central District of California which was issued in an injunctive action brought by the Commission.

The principal issue raised by the Commission's motion is whether Co Petro is a "commodity broker" within the meaning of § 109(d) of the Bankruptcy Code, 11 U.S.C. § 109(d)[1]. However, the parties raise several subsidiary issues in their memoranda. Both Co Petro and the trustee challenge the standing of the Commission to file a motion to dismiss this Chapter 11 proceeding. In addition, Co Petro relies upon the doctrine of res judicata and the Commission relies upon the doctrine of collateral estoppel to preclude this court from making an independent determination of whether Co Petro is a commodity broker. Also, the Commission's motion raises the question of whether this court should decline to exercise jurisdiction over Co Petro's Chapter 11 proceeding in the light of the ruling of the District Court in the Commission's injunctive action.

## THE COMMISSION'S ACTION FOR AN INJUNCTION

On March 21, 1980 the Commission brought an action in the United States District Court for the Central District of California against Co Petro and its various officers, directors, employees, and sales agents[2], No. CV 80–1109 RJK, charging violations of the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* The Commission's complaint, which sought a temporary restraining order, preliminary and permanent injunctions, and ancillary relief, charged that defendants violated Sections 4 and 4h of the Act, 7 U.S.C. §§ 6 and 6h, which, in general, prohibit any person from soliciting or executing any contracts for the purchase or sale of any commodity for future delivery, or from quoting the price of any such contract, unless the contract is made by or through a designated contract market.

On May 7, 1980 the Honorable Robert J. Kelleher, United States District Judge, filed his Memorandum Of Decision And Order in No. CV 80–1109. Among other things, Judge Kelleher found (See pages 4–5 of his Memorandum Of Decision And Order):

"Co Petro Marketing Group, Inc., is a California corporation which is engaged in the purchase and sale of various petroleum products. This business has several facets. First, defendant Co Petro sells gasoline directly to industrial, commercial, and retail users. As a part of these operations, Co Petro participates as a gasoline broker in the spot market. Second, Co Petro offers what it terms a 'cash forward contract' for the purchase of gasoline. Briefly, this 'cash forward contract' operates as follows. The buyer appoints Co Petro as agent to use its best efforts to purchase a given quantity and type of gasoline at a fixed price for delivery at a future, agreed–upon date. At the time the contract is executed, the

1. 11 U.S.C. § 109(d) precludes a commodity broker from being a debtor under Chapter 11, providing as follows:

"(d) Only a person that may be a debtor under chapter 7 of this title, except a stockbroker or a commodity broker, and a railroad may be a debtor under chapter 11 of this title." [Legislative history shows that Congress intended to use the word "stockbroker" rather than "stockholder". See House Report No. 95–595, 95th Congress, 1st Session (1977) at page 319, U.S.Code Cong. & Admin.News 1978, p. 5787; Senate Report No. 95–989, 2nd Session (1978) at page 31, U.S.Code Cong. & Admin. News 1978, p. 5787.].

2. Among the defendants were Harold D. Goldstein, Daniel Goldstein, and Michael Bradley Krivacek. On page 5 of its Memorandum Of Decision And Order filed on May 7, 1980 and entered on May 8, 1980 the District Court found that defendants Krivacek and Harold Goldstein served as officers of defendant Co. Petro from the time of its inception in July of 1979; that Harold Goldstein resigned from his position as a corporate officer as of March 20, 1980; that Krivacek, Harold Goldstein and Daniel Goldstein serve as Co Petro's Board of Directors, and that at least since November 1979, Harold Goldstein has owned 100% of the stock of Co Petro.

buyer remits to Co Petro some percentage of the total purchase price as determined by Co Petro. Thereafter, the buyer must notify Co Petro by a certain date either: (a) that the buyer will make payment of the balance of the purchase price and will take actual delivery of the fuel within ten days after Co Petro advises the buyer that the fuel is available for delivery; or (b) that the buyer does not wish to take delivery, but, instead, requests Co Petro to enter into the spot market and resell the fuel on the buyer's behalf; the person to whom the fuel is resold pays the then–current spot price for the gasoline, and Co Petro remits to the original purchaser the difference between the price at which the first purchaser agreed to buy the gasoline and the spot price paid by the subsequent purchaser. Finally, the 'cash forward contract' provides for an amount in liquidated damages should either the buyer or Co Petro decide to cancel the contract."

The Commission had contended that Co Petro's "cash forward contract" was actually a disguised commodity futures contract which was being executed outside of a proper contract market in violation of 7 U.S.C. §§ 6 and 6h. Judge Kelleher, after a searching analysis of the Commodity Exchange Act and its legislative history and a detailed review of the evidence, agreed with the Commission, finding and concluding as follows (See page 23 of his Memorandum Of Decision And Order):

"Consideration of the respective provisions of Co Petro's 'cash forward contract' for fuel and the standard futures contract, of the parties' expectation of no actual delivery to the original buyer under the Co Petro contract, and of the legislative history underlying the exclusion of cash commodities from the scheme of futures regulation compels the conclusion that the Co Petro contract is 'a contract for the purchase or sale of a commodity for future delivery'—namely, a futures contract–rather than a contract for

'sales of a cash commodity for deferred shipment or delivery.' Defendants Co Petro, Harold Goldstein, Daniel Goldstein, and Michael Krivacek are not properly registered with plaintiff Commission. The trading of Co Petro's gasoline futures contracts was not done on a contract market designated by the Commission, in violation of 7 U.S.C. § 6. Similarly defendants conducted a business for the purpose of soliciting and making gasoline futures contracts, and such orders, contracts, and dealings were not executed by or through a member of a proper contract market, in violation of 7 U.S.C. § 6h."

In its order the District Court permanently enjoined[3] all defendants from entering into or otherwise engaging in transactions in, commodity futures contracts relating to petroleum products. The District Court also ordered various ancillary relief, including the appointment of Victor R. Hansen as receiver for Co Petro. Among other things, the receiver was required to inventory and collect all property and assets of defendant Co Petro and, with the approval of the court, convert such assets into money or take such other action as is permitted or required by any applicable law. The defendants were required to deliver all assets and property of Co Petro to the receiver; and under the supervision of the receiver an accounting was required to be made of all assets and liabilities of defendants Harold Goldstein, Daniel Goldstein, Michael Krivacek, and Co Petro, and of all funds received and paid out by such defendants since July 1, 1979. The District Court retained jurisdiction to implement its order and to entertain any motions for relief, including requests by the receiver for guidance in the performance of his duties and applications for the review of any action taken by the receiver. See pages 29–33 of Memorandum Of Decision And Order.

Defendants Co Petro, Harold D. Goldstein, and Michael Bradley Krivacek noticed an appeal from the order of the District

---

**3.** A temporary restraining order had previously been issued on March 24, 1980. The parties stipulated to extend this temporary restraining order to May 7, 1980 at 5:00 p. m.

Court and applied to the District Court for a stay of that portion of its order directing ancillary relief. After a hearing on May 9, 1980 the District Court denied the application for a stay.

On May 15, 1980 defendants Co Petro, Harold D. Goldstein, and Krivacek applied to the United States Court of Appeals for the Ninth Circuit for a stay of the District Court's order, which motion was denied by the Court of Appeals on May 30, 1980.

## STANDING OF THE COMMISSION

§ 1109 of the Bankruptcy Code, 11 U.S.C. § 1109 provides as follows:

"§ 1109. Right to be heard

(a) The Securities and Exchange Commission may raise and may appear and be heard on any issue in a case under this chapter, but the Securities and Exchange Commission may not appeal from any judgment, order, or decree entered in the case.

(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

In the ordinary Chapter 11 proceeding the Commodity Futures Trading Commission is not a party in interest. It is not included among those entities which are specifically designated as parties in interest by 11 U.S.C. § 1109(b); and unlike the Securities and Exchange Commission, it has not been specifically authorized by statute to raise, appear, and be heard on any issue in a case under Chapter 11. Moreover, notwithstanding the specific statutory authority conferred upon the Securities and Exchange Commission, it has been said that the Securities and Exchange Commission is not a party in interest in a Chapter 11 case.

See 5 Collier On Bankruptcy, 15th Ed., ¶ 1109.02[1] and [3].

■ However, in this case the Commodity Futures Trading Commission has a special interest in the issue of whether Co Petro is a commodity broker within the meaning of 11 U.S.C. § 109(d). If Co Petro is a commodity broker, this Chapter 11 proceeding is unauthorized, and any liquidation of Co Petro under the Bankruptcy Code must take place under the special provisions of Chapter 7. Under these special liquidation provisions the Commission clearly has a right to notice and a right to appear and be heard. See 11 U.S.C. § 762.

Thus, under the reasoning of the Supreme Court in *Securities and Exchange Commission v. U. S. Realty Company*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940) the Commodity Futures Trading Commission has a sufficient interest in this case to be allowed to intervene for the purpose of moving to dismiss. In the *U. S. Realty Company* case the Supreme Court held that the Securities and Exchange Commission could be permitted to intervene in a Chapter XI proceeding and move its dismissal on the ground that resort to Chapter XI rather than Chapter X interfered with the performance of the Commission's duties and violated the policy of the Act; and that upon a denial of such motion to dismiss the Commission was entitled to appeal.

■ However, the Commodity Futures Trading Commission has not moved to intervene in this proceeding, but has merely filed its motion to dismiss and a document entitled Notice Of Appearance And Election[4]. In the view of this court, this is not enough to permit intervention. Orderly procedure would seem to require a formal motion to intervene, so that this court may, if appropriate, limit the scope of intervention, and so that the Commission, if allowed to intervene, will have the right to appeal.

4. This document reads in part as follows:

"The Commodity Futures Trading Commission, pursuant to Section 762(b) of the Bankruptcy Code, 11 U.S.C.A. § 762(b), and the principles enunciated by the Supreme Court in *Securities and Exchange Commission v. United States Realty & Improvement Co.*, 310 U.S. 434, 459–461[, 60 S.Ct. 1044, 1054–55, 84 L.Ed. 1293] (1940), elects to appear and be heard on the issues raised by the voluntary petition for a Chapter 11 reorganization filed by Co Petro Marketing Group, Inc."

Cf. *Spangler v. Pasadena City Board of Education*, 552 F.2d 1326, 1329 (9th Cir. 1977); *Peckham v. Casalduc*, 261 F.2d 120 (1st Cir. 1958), *cert. denied* 359 U.S. 958, 79 S.Ct. 798, 3 L.Ed.2d 766 (1959).

■ This court concludes that the Commission lacks standing to pursue its motion to dismiss. However, this court will nevertheless consider the remaining issues raised by the parties, since a court has a duty to inquire into the existence of its own jurisdiction, even where the issue has not been raised by the parties. *United States v. Corrick*, 298 U.S. 435, 440, 56 S.Ct. 829, 831, 80 L.Ed. 1263 (1936); *In re Trimble Company*, 479 F.2d 103, 110 (3rd Cir. 1973).

## RES JUDICATA AND COLLATERAL ESTOPPEL

■ Co Petro contends that because the Commission in its earlier injunctive action could have charged Co Petro with being an unregistered futures commission merchant in violation of § 4d of the Commodity Exchange Act, 7 U.S.C. § 6d, the doctrine of *res judicata* now bars the Commission from litigating whether Co Petro is or was a commodity broker within the meaning of 11 U.S.C. § 109(d). This contention is rejected.

In the first place, Co Petro's Chapter 11 proceeding does not involve the same cause of action as the Commission's injunctive action. Consequently, one of the prerequisites for the application of the doctrine of res judicata is lacking. *Lawlor v. National Screen Service*, 349 U.S. 322, 326–329, 75 S.Ct. 865, 867–69, 99 L.Ed. 1122 (1955); *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980). Moreover, as a matter of policy, this court should not be required under the doctrine of res judicata to entertain jurisdiction over a Chapter 11 petition merely because the Commission omitted, in a prior injunctive action, to charge Co Petro with violating a particular provision of the Commodity Exchange Act. Nor should the Commission be required to anticipate a future bankruptcy proceeding and to litigate issues which it does not desire to litigate merely to prevent the doctrine of res judicata from being applied in that bankruptcy

proceeding. Cf. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

■ The Commission in its memorandum filed on May 30, 1980 relies upon the related doctrine of collateral estoppel to preclude this court from making an independent determination of whether Co Petro is a commodity broker within the meaning of 11 U.S.C. § 109(d). However, a party asserting the defense of collateral estoppel has the burden of showing that the issue for which an estoppel is claimed was actually adjudicated in a prior proceeding; and if there is doubt on this score, collateral estoppel will not be applied. *Harris v. Jacobs, supra* at page 343.

■ The record does not establish that the District Court determined whether Co Petro was a commodity broker within the meaning of 11 U.S.C. § 109(d). Indeed, the Commission in its reply memorandum filed on July 1, 1980 appears to concede this fact, although it does so in order to refute Co Petro's res judicata claim. The Commission says (See page 8 of its reply memorandum):

". . . even assuming that in the earlier injunctive action the Commission could have charged Co Petro with being an unregistered futures commission merchant, the determination of whether it is a commodity broker for purposes of the Bankruptcy Code is a separate issue requiring analysis of the Congressional intent and purposes underlying the Bankruptcy Code. That issue obviously was not only inappropriate for litigation in the injunctive action, but irrelevant to the issue of whether the injunctive and other relief sought should be granted. Moreover, it is questionable whether the District Court hearing the injunctive claims could have determined a question of law peculiar only to a bankruptcy proceeding, when no bankruptcy petition involving Co Petro was pending in any court . . ."

## CO PETRO WAS NOT AND IS NOT A COMMODITY BROKER

11 U.S.C. § 101(5) defines a "commodity broker" as follows:

"(5) 'commodity broker' means futures commission merchant, foreign futures commission merchant, clearing organization, leverage transaction merchant, or commodity options dealer, as defined in section 761 of this title, with respect to which there is a customer, as defined in section 761(9) of this title;"

The sole basis for the Commission's contention that Co Petro is a commodity broker is its underlying contention that Co Petro is or was a "futures commission merchant". 11 U.S.C. § 761(8) provides that "futures commission merchant" shall have the meaning assigned to it by the Commodity Exchange Act; and the Commodity Exchange Act defines a "futures commission merchant" as follows (7 U.S.C. § 2):

". . . The words 'futures commission merchant' shall mean and include individuals, associations, partnerships, corporations, and trusts engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery *on or subject to the rules of any contract market* and that, in or in connection with such solicitation or acceptance of orders, accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom . . ." [Emphasis added]

It is the view of this court that the commodity futures contracts entered into by Co Petro were not "on or subject to the rules of any contract market" and that Co Petro was not a futures commission merchant under the above-quoted definition. This court further concludes that Co Petro was not and is not a commodity broker within the meaning of 11 U.S.C. § 109(d) and therefore is not precluded from being a debtor in a Chapter 11 proceeding.

■ The provisions of the Bankruptcy Code relating to commodity broker liquidation, 11 U.S.C. § 761 *et seq.*, as well as the legislative history of these provisions, indicates that the overriding concern of Congress in enacting these provisions was to protect the integrity and stability of the commodity markets. For example, in Senate Report No. 95–989, 95th Congress, 2nd Session (1978) the following appears (Pages 7–8), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5793:

"There are several fundamental principles established by the commodity broker subchapter that deserve attention. First, customer claims are granted the highest priority against the bankrupt's estate. This policy maintains consistency with the Commodity Exchange Act, which establishes customer protection as a primary objective and *should promote customer confidence in commodity markets generally.*

A second basic objective of this subchapter is the protection of commodity market stability. Protection of market stability during a commodity broker insolvency is more difficult in the commodities markets than in other markets. Commodity futures, options, and leverage contracts all have limited duration. In addition, gains and losses on open positions in the futures markets are paid out on a daily basis through variation margin payments. Thus, the trustee of an insolvent commodity broker does not have the luxury of an extended period within which to analyze the debtor's business and determine the best course of action. Delay by the trustee can result in default in making the daily variation margin payments, or default on delivery, either of which could have a ripple effect that disrupts the entire market. Further, abrupt actions by the trustee could seriously disrupt orderly trading, resulting in substantial losses to the bankrupt, its customers, and other market participants.

For these reasons the commodity broker subchapter strongly encourages the immediate transfer of customer accounts from the bankrupt to a solvent commodity broker. Such transfers should have no immediate adverse impact on the market, yet they minimize the possibility of default on margin payments and on delivery." [Emphasis added]

And House Report No. 92–595, 95th Congress, 1st Session (1977) states (Pages 271–

272), U.S. Code Cong. & Admin. News 1978, p. 6229:

"Another difference is based on the contrast in the securities and commodities markets. The securities market is well established, fluid, and generally 'thick'. By contrast, the commodities markets in futures, options, leverage transactions and the like are very thin. Thus while the trustee of a bankrupt stockbroker could reject contractual commitments with little impact on the market, a similar power in the trustee of an insolvent commodity broker could result in a ripple effect disrupting the entire market. This result is magnified in the instance a clearing organization bankruptcy.

For these reasons, the trustee is required to liquidate open contractual commitments that cannot be identified to a particular customer. The trustee is also required to liquidate all open contractual commitments that can be identified to a particular customer but with respect to which the trustee has received no instructions from the customer concerning transfer or liquidation of the commitment, and to liquidate or transfer any such commitment if trading has stopped or the contract is ready for delivery, whether or not the time limit for a customer to instruct the trustee has expired.

The trustee must also operate the business of the debtor in order to accept or make delivery on any contractual commitment that has remained open past the last day of trading and on which delivery must be made or tendered. Finally, the trustee must answer all margin calls with respect to a specifically identifiable open contractual commitment up to the extent of a customer's allowed net equity claim. Each of these four provisions is designed to effect an orderly liquidation of the estate while protecting the integrity of the commodity markets."

Thus, commodity broker liquidation under the Bankruptcy Code contemplates that the trustee will participate to some extent in the commodity markets in order to minimize the disrupting effect of commodity broker bankruptcy and to protect the integrity of the commodity markets. Such participation by a trustee in connection with the unlawful contracts entered into by Co Petro would not be feasible and would probably violate the spirit if not the letter of the permanent injunction issued by the District Court.

Both the trustee and the commission rely upon the testimony of William T. Bagley, then chairman of the Commission before the House Committee On Civil And Constitutional Rights. See Hearings Before The Subcommittee On Civil And Constitutional Rights Of The Committee On The Judiciary, House of Representatives, 94th Congress, 2nd Session on H.R. 31 and H.R. 32, pages 2377–2420. Chairman Bagley's testimony is entitled to careful consideration, since the provisions of the Bankruptcy Code relating to commodity brokers is derived largely from his testimony. See House report No. 95–595, *supra.*, at page 271. In the view of this court, Chairman Bagley's testimony and recommendations concerning special commodity broker liquidation was given in the context of a regulated market and exchange and did not suggest that such liquidation would apply to an illegal operator such as Co Petro.

The illegal operations of Co Petro have been enjoined by the District Court; however, it appears that Co Petro also engaged in substantial legal operations which the District Court did not enjoin[5]. This court concludes that Co Petro is not pre-

5. A declaration of the trustee, Victor R. Hansen, dated June 30, 1980 states in part as follows:

"(a) Co Petro operates five gas stations and car washes. Four are located in California and one is located in Nevada.

(b) Co Petro has engaged in sales of gasoline products on the spot market. Because of the absence of certain records of the company, I have not yet been able to ascertain the extent of those spot market transactions.

(c) Co Petro never maintained any segregated accounts for funds of investors with respect to its futures contracts.

(d) All money received by Co Petro from its wholesale and retail operations appears to have been commingled with investor funds in Co Petro's banking accounts."

cluded from being a debtor under Chapter 11 in connection with its legal operations.

### ABSTENTION

■ Although this court has determined that it has jurisdiction over Co Petro's Chapter 11 proceeding, this court may, in the exercise of its discretion, decline to exercise such jurisdiction. See § 305 of the Bankruptcy Code, 11 U.S.C. § 305; Senate Report No. 95-989, *supra.*, at pages 35-36; House Report No. 95-595, *supra.*, at page 325; 2 Collier On Bankruptcy, 15th Ed., ¶ 305.01 *et seq.* House Report No. 95-595 *supra.* in discussing proposed § 305 of the Bankruptcy Code, states, *inter alia* (Page 325), U.S. Code Cong. & Admin. News 1978, p. 6281:

"A principle of the common law requires a court with jurisdiction over a particular matter to take jurisdiction. This section recognizes that there are cases in which it would be appropriate for the court to decline jurisdiction. Abstention under this section, however, is of jurisdiction over the entire case. Abstention from jurisdiction over a particular proceeding in a case is governed by proposed 28 U.S.C. 1471(c). Thus, the court is permitted, if the interests of creditors and the debtor would be better served by dismissal of the case or suspension of all proceedings in the case, to so order . ."

In its motion to dismiss the Commission urged that Co Petro should not be allowed to circumvent the order of the District Court by filing a Chapter 11 petition. However, at the hearing on the motion to dismiss the Commission did not press this point apparently because Victor R. Hansen, who had previously been appointed receiver by the District Court, was thereafter appointed trustee in the Chapter 11 proceed-

ing. Judge Hansen expressed the view that he was able to carry out his duties both as receiver for the District Court and as trustee in this Chapter 11 proceeding [6].

■ This court is of the view that Co Petro's Chapter 11 proceeding does not at this time circumvent or conflict with the ruling of the District Court in the Commission's injunctive action [7]. Therefore, this court will not at this time decline to exercise jurisdiction over Co Petro's Chapter 11 proceeding. However, conflicts in the exercise of jurisdiction by courts should if possible be avoided; therefore, if in the future a conflict arises between the duties of Mr. Sulmeyer as trustee for this court and his duties as receiver for the District Court, the matter should be brought to this court's attention so that further consideration may be given to the question of abstention. Parties in interest should also bring to this court's attention any facts which would warrant dismissal under 11 U.S.C. § 1112(b).

**6.** Victor R. Hansen had previously served as a judge of the Los Angeles County Superior Court. Shortly after the hearing on the motion to dismiss Judge Hansen died; and Irving Sulmeyer, Esq., has succeeded him both as receiver for the District Court and as trustee in this Chapter 11 proceeding.

**7.** The Commission's injunctive action would seem to be an action "by a governmental unit to enforce such governmental unit's police or regulatory power" within the meaning of 11 U.S.C. § 362(b)(4); consequently, the filing of Co Petro's Chapter 11 petition did not operate as an automatic stay of that action. See 2 Collier On Bankruptcy, 15th Ed., ¶ 362.05[4].